[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 45, whose birth name is Cooper, and the defendant husband, 46, married in Quag, New York on October 17, 1987. The plaintiff has resided in Connecticut continuously for over twelve months prior to today when the judgment of dissolution is entered, thereby affording the court jurisdiction, § 46b-44
(c)(1). There are two children born to the parties, issue of the marriage:
 Alexander d.o.b. 7/29/89 and Gregory d.o.b. 1/2/91.
The Parties have agreed to joint legal custody with physical custody being with the plaintiff and the defendant having reasonable visitation rights. The court accepts the stipulation.
The plaintiff has a bachelor's degree in fine arts. For eleven years prior to the marriage the plaintiff was employed CT Page 4422 first in textile design by various employers until 1986 when she created a sub-chapter S corporation known as Connie Cooper Designs. Her single highest annual earnings from it was $40,000.00 to $50,000.00. The plaintiff closed her business when pregnant with her second child. The plaintiff has not worked since the birth of her older child. The industry is now computer driven in which the plaintiff has no training. Her work had entailed extensive traveling since she had to be on the client's premises.
In order to return to interior design she will be required to pass an examination given by the American Society of Interior Design. After taking several required courses and spending time gaining experience, she may then join the society as a member. The plaintiff was careful to point out that an interior decorator does not equate with someone entitled to use the title of interior designer.
The defendant has an undergraduate degree, an M.B.A. and is a C.P.A. admitted in Illinois. He began his present career with Citibank in April, 1986. In 1991, the defendant was offered a position in Hong Kong. He accepted and the family spent five years there until he was offered a transfer to Singapore which he accepted. The family lived there until December 31, 1997 when they all returned to the U.S.A. The defendant currently is paid a base salary of $195,000.00. He has been paid an annual bonus. This year he received $75,000.00. In 1997 and in 1998 he received $100,000.00.
Two important features of his assets are shares of stock of Citicorp and options on Citicorp stock. At the time of trial the defendant owned 24,555 shares of Citicorp having a basis of $198,959.00 and a market value of $1,556,141.00. He owned $30,750.00 vested options in Citicorp stock having a cost basis of $355,825.00 and a market value of $1,948,781.00. In addition, he had been granted 6251 unvested options as follows:
 1750 to vest 1/16/00 @ $26.50 per share. 2250.5 to vest 1/21/00 @ $44.20 per share. and 2250.5 to vest on 1/21/01 @ $44.20 per share.
The stock closed yesterday at $74.9/16.
The defendant lists other assets as:
CT Page 4423 Whistler proceeds $194,968.00 Stock purchase escrow account $ 61,300.00 Apartment security deposit $ 4,000.00 Home furnishings and personality $ 50,000.00 510,568 frequent flyer miles $ 0(no value assigned) Total other assets $310,268.00
The defendant has a vested pension which is listed as "approximately $2600 p/mo starting at age 65."
The defendant has deferred compensation of $277,200.00 in an IRA and $732,922.00 in a savings incentive plan.
The defendant list liabilities totaling $82,799.00. There are assets held in trust for the parties' children which the court will allow to remain as is.
The plaintiff made material nonmonetary contributions as wife, mother and homemaker, O'Neill v. O'Neill, 13 Conn. App. 300, 311
(1988).
The primary cause of the breakdown of the marriage was due to defendant's affair with another woman that began in March of 1997, after the family returned to Westport at the end of 1997. The final separation occurred on February 14, 1998 when the defendant moved from the marital home.
The defendant purchased a motor vehicle for $15,000.00 for his use while this case was pending. The plaintiff has a leased vehicle for which she lists $90.00 weekly lease cost. The court has no reason to find that the defendant's purchase was worth less than the price he paid. The plaintiff's request that the defendant pay off her lease would not balance the scales. The court declines to enter the requested order prior to the division of the remaining assets.
The plaintiff's sole assets consist of bank accounts totaling $20,777.00, an IRA containing $6000.00 and a Keogh account containing $102,516.00.
Both parties are in good health. The defendant possesses the greater opportunity for future acquisition of capital assets and income for he possesses much greater vocational skills and has greater opportunity for employability in the financial, banking and securities industry. The plaintiff although talented and well CT Page 4424 educated, has demonstrated a much smaller earning capacity in the past and must hone her skills for her return to the business world.
The court has considered the statutory criteria contained in §46b-81, 46b-82 and 46b-84 as well as relevant case law in entering the following decree.
1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown. Each party is now declared unmarried.
2. The parties are awarded joint legal custody with the primary physical custody of the children with the plaintiff mother. The defendant shall have reasonable visitation rights. The parties have agreed upon a detailed schedule that is attached as defendant's Exhibit B.
3. The defendant shall pay to the plaintiff, as unallocated alimony and child support. 50% of his base salary. For the defendant's bonus or bonuses received in the years 2000 through 2004 he shall pay 35% of any bonus to the plaintiff For the bonus or bonuses received in the years 2005 through 2007 he shall pay 25% of any bonus up to a ceiling of $125,000.00. For the bonus or bonuses received in the years 2008 through 2010 he shall pay 20% of any bonus up to a ceiling of $125,000.00. Alimony shall terminate upon the death of either party, upon the remarriage of the plaintiff or, in any and all events, on June 30, 2010 and such terminal date is non-modifiable under any circumstances. Section 46b-86(b) applies to this order.
4. The plaintiff shall have the right to claim the dependency exemptions for the children commencing with the tax year ending December 31, 1999 and continuing for so long as the defendant is paying alimony or child support.
5. The husband shall keep and maintain or cause to be kept and maintained medical and hospitalization insurance for the benefit of said minor children until each reaches the age of majority, graduates from high school or becomes 19 years of age whichever shall first occur. The husband's obligation shall be modifiable by the court in the event said health insurance is not available to the husband through his employer. Section 46b-84(d) applies to this order.
All unreimbursed medical and dental expenses for said CT Page 4425 children shall be divided equally between the parties. Except in the event of an emergency all elective surgery, psychiatric, psychological and dental treatment shall not be undertaken without the joint agreement of the parties.
6. The defendant shall cooperate with the plaintiff if she elects to continue medical coverage for herself via COBRA.
7. The parties have agreed that the cash value of the existing life insurance policies on the defendant's life shall be used for the benefit of the children's college educations. The defendant shall continue to provide life insurance in the face amount of $1,000,000.00 for each child and he shall pay the premiums on the policies until each child reaches majority. If any money is left over after the last child has been educated, the remaining proceeds shall be divided between the children. The defendant may substitute policies while maintaining the coverage ordered, provided the current cash values of $19,609.00 and $81,933.00 are preserved in some form.
8. The husband, for so long as he is obligated to pay alimony, shall maintain and name the wife as the irrevocable beneficiary of $1,000,000.00 of life insurance. The husband shall be entitled to reduce said amount by $100,000.00 on the annual anniversary date of the entry of a judgment of dissolution. The parties' two minor children shall become equal beneficiaries of any amount of insurance so reduced until each child is the beneficiary of $250,000.00 of such life insurance.
The life insurance for the benefit of the wife shall terminate absolutely on July 1, 2009. The husband shall maintain life insurance for the benefit of the parties' children until they attain majority and have graduated from high school or until 19 years of age if still in high school.
9. For tax year 1998, the parties have agreed to file joint tax returns. For the tax year 1999 the wife will get the mortgage and real estate tax deductions because the husband will receive an alimony deduction pursuant to a stipulation entered and ordered on February 8, 1999 as computer document #115. The agreement, although entered pendente, is incorporated herein as part of this memorandum and attached as an appendix.
10. The following assets shall be retained by the plaintiff as her sole property: CT Page 4426
 a) 58 High Point Road, Westport, Connecticut in the present condition "as is". The plaintiff shall assume and pay the mortgage balance and taxes as her sole liability saving the defendant harmless. The contents are also awarded to the plaintiff as her sole property except for the stereo system that is awarded to the defendant.
 b) Bank accounts identified as checking plus $289.00; Citibank Singapore $3,557.00; Toronto Dominion $11,566.00; and Citibank Pref MMA $14,788.00.
c) Plaintiffs Keogh account and IRA account.
d) Plaintiff's leased vehicle.
11. The following assets shall be retained by the defendant as his sole property:
a) Escrow — stock purchase plan.
b) IRA Citibank account.
c) His auto.
d) The rental security deposit.
12. The parties shall divide equally the following assets:
a) 24,555 shares of Citigroup stock.
b) All Citigroup options, both vested and unvested.
c) Citigroup savings incentive plan.
d) Defendant's retirement plan.
 e) Smith-Barney margin account provided the defendant shall be responsible for $50,000.00 of the $69,295.00 margin loan, and the plaintiff shall bear the balance.
f) The Canadian escrow fund, also referred to as "Whistler".
13. The plaintiff shall be solely responsible for the CT Page 4427 balance of the lease on her Subaru.
14. The defendant shall be solely responsible for the Aurora life insurance policy loan of $7,053.00 and the Citibank overdraft of $14,665.00.
15. The plaintiff shall be solely responsible for her Visa account, her Citibank Checking Plus item of $1,128.00 and her financial advisor expenses.
16. Each party shall be responsible for the respective litigation expenses each has incurred.
17. The parties shall divide the frequent flyer miles as proposed by the defendant, copy of which is attached.
The court retains jurisdiction for execution of any QDRO or other supporting documents.
Counsel for the plaintiff is requested to prepare the judgment file.
HARRIGAN, J.
DN# FA-98-0164554S : SUPERIOR COURT
CONNIE MAGILL : STAMFORD/NORWALK ----------------- VS. : AT STAMFORD
SCOTT MAGILL : DATE: 2/8/99 — --------------- ------------
 AGREEMENT
RE: MOTIONS #114.01, 114.02
The parties ask the Court to approve the attached Agreement and to make the terms thereof orders of the court.
Monetary orders comply with Family Support Guidelines: Yes ___ No ___ If the orders deviate from the Guidelines, state the reasons for the deviation: ________________________________________________________________ ________________________________________________________________ ________________________________________________________________ CT Page 4428
We herby certify that the above conforms with the agreement of the parties.
Connie Magill Andrew P. Nevmir ______________________ _________________________ Plantiff Defendant's Attorney
Gary I. Cokey Donald S. Magill ______________________ _________________________ Plantiff's Attorney Defendant
APPROVED AND SO ORDERED: BY THE COURT
HARRIGAN, J.
D.N. FA 98 0164554 S
CONSTANCE MAGILL | SUPERIOR COURT v. | J.D. STAMFORD SCOTT MAGILL | FEB. 8, 1999
 AGREEMENT
1. The parties shall file joint tax returns (state and federal) for 1998. The husband shall indemnify and hold the wife harmless for any liability due on said return or any audit thereof including reasonable professional fees.
2. Motions 114.01 and 114.02. All moneies and payments being made by the husband to or for the benefit of the wife since January 1st 1999 shall be considered unallocated alimony and child support tax deductible by the husband and includable as income to the wife for calendar year 1999. The wife reserves the right to argue at the time of the trial that she should have received larger payment based both upon her claim that the amount of the payments are inadequate based upon the financial circumstances of the parties and upon the tax implications to the wife of such payments being considered alimony.
______________________ ____________________ Constance Magill Scott Magill
______________________ ____________________ CT Page 4429 Gary I. Cokey, ESQ. Andrew P. Nevmir, ESQ. Her Attorney His Attorney
 Proposed Division of Frequent Flyer Miles Total Scott's Connie's Balance Share Share
--------- -------- ---------American:
Balance at 3/1/98 86,637 43,319 43,319 less: Scott to Whistler (25,000) (25,000) Connie to London (40,000) (40,000) Additions: 49,946 49,946
 ________ ________ ________ Balance at 3/26/99 71,583 68,265 3,319 -------- -------- --------
Norwest:
Balance at 3/1/98 269,713 134,857 134,857 less: Connie to Detroit (75,000) (75,000) Scott to Asia (50,000) (50,000) Additions: 75,221 75,221
 _________ _________ ________ Balance at 3/26/99 219,934 160,078 59,857 --------- --------- --------
Passages:
Balance at 3/1/98 196,693 98,346 98,346
Additions: 23,963 23,963
_________ _________ _________ Balance at 3/26/99 220,665 122,309 98,346 --------- --------- --------- _________ ________ _________Totals: 512,172 350,651 161,521 --------- --------- ---------
FA-98-0164554 S April 22, 1999 Magill v. Magill J.D. Stamford
CT Page 4430 (1) The parties agree that the existing cash value in the Aurora and Northwestern Life Ins. policies shall be dedicated to the college education of the children.
 (2) The court shall determine whether these policies must be maintained by premium payments in the future and the court shall allocate responsibility for the existing Aurora loan.
 _______________ Connie Magill _______________ Scott Magill